FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 SEP 26 PM 2: 12
U.S. DISTRICT COURT
N.D. OF ALABAMA

PHILLIP R. BURLESON,                    )
                                        )
            Plaintiff,                  )
                                        )          CIVIL ACTION NUMBER:
v.                                      )          CV-00-BE-2926-NW
                                        )
THE COLBERT COUNTY-NORTHWEST            )
ALABAMA HEALTHCARE AUTHORITY,           )
d/b/a HELEN KELLER HOSPITAL and         )
WILLIAM H. ANDERSON,                    )
                                        )          ENTERED
                                        )          SEP 26 200
            Defendants.                 )

## MEMORANDUM OPINION

This case is before the court on the Defendant's Motion for Summary Judgment filed

November 15, 2001. The matter has been fully and ably briefed by both sides, and counsel

presented oral arguments to the court on July 10, 2002. The issues presented by the defendants'

motion involve whether candidacy for public office constitutes protected speech under the First

Amendment, and, if so, whether plaintiff can establish a prima facie case of retaliation under 42

U.S.C. § 1983. Having considered the briefs, evidentiary submissions, and arguments of

counsel, the court has determined that Summary Judgment is due to be granted for the reasons

discussed in this opinion.

This case arose because of the discharge of plaintiff Phillip R. Burleson as part of a

reduction in force ("RIF") by his employer defendant Colbert County - Northwest Alabama

Healthcare Authority ("the Authority") on March 24, 2000. Defendant William H. Anderson was

the Chief Executive Officer and President of the Authority who made the decision to eliminate

39

the plaintiff's position, along with two other upper level positions.  The basis of the plaintiff's

complaint is that his termination was motivated by the announcement of his candidacy for a seat

on the Colbert County Commission and not because of economic reasons as the defendants

contend.  The plaintiff's theory of the case is that his termination violated his First Amendment

rights and thereby created a cause of action under 42 U.S.C. § 1983.  The defendants counter that

business considerations caused plaintiff's termination.

**Statement of the Case**

Plaintiff filed suit in the Circuit Court of Colbert County, Alabama, on September 20,

2000, pleading a violation of the Alabama Age Discrimination in Employment Act ("AADEA")

against the Authority and a violation of plaintiff's First Amendment rights secured under 42

U.S.C. § 1983 against the Authority and Anderson individually.  Defendants removed this case to

the United States District Court for the Northern District of Alabama on October 16, 2000.  On

November 13, 2000, Anderson filed a motion to dismiss the § 1983 claim against him, asserting

qualified immunity.  Also on November 13, 2000, the Authority filed a motion to dismiss the

AADEA claim as barred by the statute of limitations.  Plaintiff amended his complaint on

February 1, 2001, adding a claim under the federal Age Discrimination in Employment Act.

Anderson renewed his motion to dismiss on August 27, 2001.[1]

On October 29, 2001, the court dismissed the age discrimination claims, after the parties

filed a joint stipulation of dismissal as to these claims.[2]  Thus, the only remaining claim to be

---

[1]No ruling has been made on this Motion to Dimiss and the arguments are renewed in Defendants' Motion for Summary Judgment.  The court does not reach the question of qualified immunity because other grounds support summary judgment.

[2]This case was reassigned to the undersigned judge on November 14, 2002.

decided is the claim brought pursuant to 42 U.S.C. § 1983 for a First Amendment violation.

Defendants filed their Motion for Summary Judgment on November 15, 2001.

## FINDINGS OF FACT

The court's findings of fact come from the agreed facts and, where the parties could not agree, from plaintiff's version of those facts. Plaintiff, Phillip R. Burleson, was formerly employed with the Defendant Authority in Tuscumbia, Alabama, as Director of Materials Management. In 1999, the Authority was operating at a deficit as it had been for some period of time. The Board of the Authority replaced the former CEO with Anderson in November 1999, because the former CEO had not resolved the Authority's financial crises to the Board's satisfaction. The Board hired Anderson, in part, to address the financial issues facing the Authority.

Anderson concluded that the Authority should reduce expenses by cutting salaries and eliminating some positions, as long as the positions eliminated would not adversely affect patient care. At Anderson's direction, in February 2000, the senior management team began discussing positions that could be eliminated. By March 4, 2000, Anderson, with the input of the team, had chosen several positions to eliminate in a reduction in force, although final decisions were initially delayed until the end of an early retirement incentive period. Those possible positions to eliminate included, among others, Burleson's position as Director of Materials Management, and two other non-patient care management positions: Director of Corporate Compliance, held by Sandra Scarborough, and Managed Care Manager, held by William Howard. Several other positions were affected in the RIF, but were either patient care positions, non-management positions, or positions that were combined rather than eliminated.

3

The team listed Burleson's position to be eliminated in the RIF because he was being paid a relatively high salary, and the team believed the responsibilities of his position could be absorbed by others. In particular, Burleson's responsibilities to negotiate prices on capital equipment purchases could be absorbed by vice presidents and department managers, or possibly by an outside purchasing group.

During the same approximate time period as the team discussed the RIF, the Authority also changed its retirement program to allow employees to retire with only 25 years of service rather than 30 years as previously required. The Authority initiated this early retirement incentive on March 1, 2000, allowing employees with 25 years of service to retire by April 14, 2000, and receive additional pay and benefits as an incentive. The senior management team planned to delay initiation of the RIF until after April 14, 2000, to evaluate the economic effect of the early retirement incentive. Anderson testified that, although there "was a possibility that Mr. Burleson might not have been terminated depending on the issues about transfer and what the current needs might be based on other retirements," this "possibility" was "probably not likely."

On March 4, 2000, the management team met with the Board for a planning session or retreat. Among the issues discussed at the retreat was the RIF. Anderson informed the Board of the positions slated for elimination, including Burleson's position. The Board did not exercise any control or make any changes to the suggested positions selected for inclusion in the RIF.

At some point during the week of March 13-17, 2000, Sandra Scarborough had a discussion with Pam Patton, Director of Human Resources, and allegedly informed Patton that she had heard from another manager that she, Scarborough, was not going to be terminated in a

4

RIF.  Patton allegedly responded, "your name is on a list."  According to Scarborough, Patton

told her that Burleson's name was also "on the list."  Scarborough allegedly told Burleson of this

conversation with Patton before March 17, 2000.

On approximately March 10, 2000, Burleson qualified to run as a candidate for the

Colbert County Commission.  On March 19, 2000, the local newspaper, the *Florence Times-

Daily*, ran an article on candidates for the Commission.  The article described Burleson's

campaign platform as "continu[ing] quality health care and supporting law enforcement."

Anderson is not certain whether he ever saw the article.  Anderson did know at some point in

March 2000, prior to Burleson's termination, that Burleson was running for the County

Commission.

On Monday, March 20, 2000, or Tuesday, March 21, 2000, Patton allegedly told

Scarborough that Scarborough would be terminated on Friday, March 24, 2000.  Patton did not

tell Scarborough whether Burleson would also be terminated on March 24, 2000.  Scarborough

does not recall whether she told Burleson of this conversation with Patton.

On March 20 or 21 or 22, 2000, Burleson met with Anderson at Burleson's request.[3]

During the meeting, Burleson informed Anderson that he intended to support Anderson in his

endeavors as the new CEO.  Burleson also inquired of Anderson whether Burleson's job was

going to be eliminated.  Anderson told Burleson he "would let him know Friday."

Anderson testified that he believed that making Burleson wait approximately three weeks,

until the end of the early retirement incentive, for an answer to his question regarding whether his

position was going to be eliminated would be unreasonable.  According to Anderson, Burleson's

---

[3]Plaintiff's own deposition is unclear as to when this meeting took place.

approaching Anderson on March 20 or 21 caused Anderson to speak with Board Chairman Gosney about Burleson's situation.  Gosney agreed with Anderson that the RIF,  as it concerned the non-patient care managers whose positions were slated for elimination, should be implemented immediately as a result of Burleson's inquiry.  According to Gosney's testimony, Gosney and Anderson agreed that Anderson "should tell Mr. Burleson the truth, and the truth was that the job was being eliminated."[4]  The discussions between Anderson and Gosney about Burleson occurred after Anderson told Burleson that he would let him know on Friday, and before the meeting with Burleson telling him of his discharge on March 24.  Gosney testified that Burleson's candidacy for the County Commission never came up in any discussion between Anderson and Gosney related to the RIF decisions.  According to Anderson, because of Burleson's question, Anderson decided that he would terminate Burleson, as well as the other two non-patient-care managers, Scarborough and Howard, on Friday, March 24, 2000.

On Friday, March 24, 2000, Anderson met with all three managers individually and informed them that, because of an economically driven RIF, their positions had been eliminated and their employment with the Authority was terminated immediately.  Anderson allowed Scarborough, Howard, and Burleson to receive the benefits of the early retirement incentive, despite terminating them prior to their actually seeking such benefits, after Burleson complained that the severance package initially offered was less beneficial than the early retirement incentive.

Burleson admits no one has ever told him his candidacy for the Colbert County Commission was the reason he was terminated, although Burleson was terminated less than a

---

[4]Plaintiff disputes this testimony by Anderson and Gosney as self-serving testimony, but he offered nothing to contradict this testimony.

6

week after news of his candidacy appeared in the paper and while an early retirement incentive was pending. Burleson admits he is not arguing that the Authority retaliated against him for making a statement about a specific subject matter, only that the Authority retaliated against him for announcing his candidacy for a seat on the Commission. Burleson disagrees with the defendants' inclusion of his position in the RIF because, he contends, terminating him was not a "cost saver;" Burleson argues he saved the Authority money by negotiating good deals on purchases of hospital equipment and supplies.

In addition to the timing of defendants' action terminating him, Burleson offered the following evidence as supporting inferences that his candidacy played a motivating role in his termination. Tom Coburn, a member of the Board of the Authority, "put . . . up signs" for Burleson's opponent. According to the affidavit of Larry Oliver, on the morning of Monday, March 20, 2000, at approximately 9:00 a.m., Coburn came into the administration area of the hospital near Anderson's office appearing agitated and upset about something. However, Coburn testified that he did not have any communications with Anderson about selecting Burleson's position for inclusion in the RIF. Burleson offered no evidence linking Coburn's support of Burleson's opponent, or Coburn's appearance in the administration area of the hospital on the date of a Board meeting with any efforts by Coburn to affect Burleson's job.

Burleson was not the only employee of the Authority who ran for the Commission in 2000. Rhonda Bailey, a registered nurse, and Duane Shearin, a respiratory therapist, also campaigned for commission seats. Bailey and Shearin's names appeared in the same article in the *Times-Daily* on March 19. However, the Authority did not terminate Bailey or Shearin.

7

## SUMMARY JUDGMENT STANDARD

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party

8

does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant

9

the motion if no genuine issues of material fact exist and if the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## DISCUSSION

Section 1983[5] permits an individual to obtain legal redress for a violation of constitutional rights by a state actor. Section 1983, by itself, does not provide a source of substantive federal rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137 n.3 (1979); *see also Shows v. Morgan*, 40 F. Supp. 2d 1345, 1355 (M.D. Ala. 1999).

---

[5]42 U.S.C. § 1983, in relevant part, provides as follows: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ..

To state a claim for relief under Section 1983, the plaintiff has the burden of alleging two elements with factual detail: "(1) that [he] suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States," and (2) that a person "acting under color of law" caused the deprivation, either by an act or omission. *Wideman v. Shallowford Community Hosp.* 826 F.2d 1030, 1032 (11th Cir. 1987) (citation omitted); *see also Shows*, 40 F. Supp. 2d at 1355; *Ross v. State of Alabama*, 893 F. Supp. 1545, 1553 (M.D. Ala. 1995). The Authority argues that it cannot be held liable under § 1983 because Anderson (1) did not act pursuant to government custom or policy or (2) was not a final policymaker. *See Brown v. Ft. Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991), *appeal after remand, Brown v. Cochran*, 171 F.3d 1329 (11th Cir. 1999). The court need not reach this issue because summary judgment is appropriate for numerous other reasons.

Although a governmental agency "'may not demote or discharge a public employee in retaliation for protected speech,' a public employee's right to freedom of speech...is not absolute." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001)(quoting *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539 (11th Cir. 1994) (quoting *Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993), *cert. denied*, 512 U.S. 1221 (1994)). "To determine whether a state actor has retaliated against an employee because of the employee's protected speech, [courts] have used a four-pronged test based on the Supreme Court's decision in *Pickering v. Board of Education*, 391 U.S. 563 (1968)." *Chesser*, 248 F.3d at 1122.

Under this test, the court must evaluate

(1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a

11

substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct.

*Bryson v. City of Waycross*, 888 F.2d 1562, 1656-66 (11th Cir. 1989). "Failure to establish any one of [the first] three elements is fatal to Plaintiff's claims." *Mason v. Village of El-Portal*, 240 F.3d 1337, 1339-40 (11th Cir. 2001). Even if a plaintiff can establish the first three prongs, a defendant's proof of the fourth prong constitutes a complete bar to an action under § 1983, as set forth by the Supreme Court in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287 (1977).

### A.    PLAINTIFF'S ALLEGED SPEECH WAS NOT PROTECTED.

Even if Burleson engaged in "speech" by announcing his candidacy for the County Commission, he failed to establish that his speech was entitled to protection under the First Amendment. Speech addresses a matter of public concern, and thus is entitled to constitutional protection, if it relates "'to any matter of political, social, or other concern to the community.'" *Chesser*, 248 F.3d at 1123 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The Supreme Court has never recognized a fundamental right to express one's political views through candidacy. *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (plurality opinion) (stating that, "far from recognizing candidacy as a 'fundamental right,'" the Court has held that the existence of barriers to candidates' access to a state primary ballot does not compel close scrutiny), quoting *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972).

Three Supreme Court decisions "indicate that plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection." *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir.), *cert. denied*, 434 U.S. 968 (1977) (citing *Buckley v. Valeo*, 424 U.S. 1, 39-59 (1976); *Bullock v.*

*Carter*, 405 U.S. 134 (1972); *Williams v. Rhodes*, 393 U.S. 23 (1968)).  Other courts have refused

to find that candidacy alone deserves First Amendment protection.  For example, in *Bart v.*

*Telford*, 677 F.2d 622. (7th Cir. 1982), the Seventh Circuit refused to hold that a plaintiff's

seeking election to her supervisor's job of mayor was protected activity.  Instead, the court

concluded: "The First Amendment does not in terms confer a right to run for public office, and

this court has held that it does not do so by implication, either." 677 F.2d at 624; *see Carver v.*

*Dennis*, 104 F.3d 847, 852-53 (6th Cir. 1997) (declining to find a violation of

the First Amendment where the plaintiff was fired after she sought election to her supervisor's

job); *Wilbur v. Mahan*, 3 F.3d 214, 219 (7th Cir. 1993) (Easterbrook, J., concurring) *(citing*

*Clements*, 457 U.S. at 971-73 (plurality opinion) (stating that a public body may forbid its

employees to run for elective office); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 616-17

(1973) (finding that statute regulating political activity by certain state employees in a neutral

manner was facially valid); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*,

413 U.S. 548, 556 (1973) (holding that First Amendment does not prevent statutes forbidding

partisan political conduct by federal employees); *United Public Workers v. Mitchell*, 330 U.S. 75

(1947) (holding statute regulating political conduct of government employees constitutional).

Burleson relied on the case of *Holley v. Seminole County School District*, 755 F.2d 1492

(11th Cir. 1985), to support his argument that his candidacy, without more, qualifies as protected

speech.  However, the reasoning in *Holley* actually underscores the deficiency of Burleson's First

Amendment claim.  In *Holley*, the plaintiff was a teacher and a high school football coach in the

Seminole County School District.  In 1979, Holley ran for the elected position of school

superintendent in a three-person race, and lost to the incumbent superintendent.  Thereafter,

Holley remained involved politically, actively seeking to have local legislation enacted that would change the method of selection of local school board members from appointment by the grand jury to popular election.  Two years after Holley's defeat, the superintendent mailed Holley a notice indicating his teaching contract would not be renewed.  Thereafter, Holley sued the school district and individual defendants alleging claims under 42 U.S.C. § 1983 for due process and First Amendment violations.  Regarding his First Amendment claim, Holley asserted that the superintendent and the school district retaliated against him in violation of the First Amendment for his running for superintendent and for his political involvement in attempting to change the method by which school board members were chosen.  755 F.2d at 1500.

A careful reading of *Holley* shows that its principal holding was limited to an issue not presented here: that a district court must review *de novo* a First Amendment claim presented by a teacher who has participated unsuccessfully in a state administrative "due process" hearing. 755 F.2d at 1501-04.  Further, the *Holley* court analyzed whether the trial court correctly granted summary judgment even though the board of education, which reviewed the teacher's grievance, "admitted in its opinion that Holley's political activity may have played a role [in his dismissal] (which would certainly permit an inference under the first part of the *Mt. Healthy* test that the political activity was a substantial and motivating factor)...." 755 F.2d at 1504.

The court in *Holley* also reviewed a wholly different legal issue in that the trial court had given deference to the board's finding that "even if [the] decision was motivated in part by Holley's activity, the decision not to renew his contract would have been made anyway in light of the overwhelming evidence of Holley's misconduct."  755 F.2d at 1504.  In other words, the trial court, in granting summary judgment, essentially found that even though defendant admitted that

14

it considered the teacher's First Amendment protected activity, the school district would still prevail in the case because it would carry its burden of proof and show that the same decision would have been made even absent any constitutional violation.

*Holley* is distinguishable for three reasons. First, the board in *Holley* admitted that the employee's political activity was considered in not renewing his contract. 755 F.2d at 1504. In this case, the defendants specifically deny they considered Burleson's candidacy and Burleson offered no evidence to the contrary.

Second, the *Holley* trial court's grant of summary judgment was based upon impermissible deference given to a state agency's factual finding that Holley would lose based upon the school system's *Mt. Healthy* defense. 755 F.2d at 1504. This issue is not present in this case, where no state agency has ever reviewed Burleson's dismissal.

Third, the *Holley* case did not address the issue here: whether a simple announcement of candidacy for a public office, without more, constitutes protected speech. In *Holley*, the plaintiff not only ran for superintendent against the individual who later did not renew his contract, he also attempted, through the political process, to change how school board members were elected. 755 F.2d at 1495. *Cf. Carver v. Dennis*, 104 F.3d 847, at 852-53 (6th Cir. 1997) (holding that even the plaintiff's seeking election to her supervisor's job was not sufficient alone to render her conduct protected). Holley's political activity and expression went far beyond the facts presented to this court. Burleson merely asserted that he was terminated as a result of his candidacy, not from any statements or expressions that he personally made to defendants. Furthermore, the defendants in *Holley* acknowledged that Holley's "candidacy for school superintendent and his efforts to alter the method for selecting school board members [were] protected by the First Amendment." 755

F.2d at 1500 (emphasis added). Thus, because the defendants in *Holley* did not question whether Holley's activities were protected, the Eleventh Circuit did not address this issue on appeal. The *Holley* court merely adopted the stipulation of the parties that Holley's political activity was protected and generally stated that "[i]nvolvement in the political process is central to the meaning of the First Amendment." 755 F.2d at 1500 (citing *Pickering v. Board of Education*, 391 U.S. 563 (1968)). Therefore, the decision in *Holley* does not take Burleson's claim outside the more general rule that a "plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection." *Newcomb v. Brennan*, 558 F.2d at 828 (emphasis added).

Burleson offered no evidence of anything more than his candidacy for office. He presented no evidence that Anderson, the decision maker, voiced his disapproval of Burleson's candidacy or that Anderson discouraged his candidacy. In fact, Burleson admitted that he knew of no reason why Anderson would not approve of his candidacy, and admitted the Authority would have benefitted from his holding a commission seat. He never alleged that anyone referenced his candidacy or tried to talk him out of seeking political office. Without more, Burleson failed to establish that merely seeking political office qualifies for First Amendment protection. The announcement of Burleson's candidacy, standing alone (i.e. with no evidence of partisanship or opposition to Burleson's candidacy or his platform), does not present a clearly established constitutional right. The court, thus, concludes that Burleson failed to establish that his candidacy qualified as protected speech under the First Amendment. Therefore, his § 1983 action fails as a matter of law.

      B.      PLAINTIFF DID NOT OFFER SUBSTANTIVE EVIDENCE THAT HIS CANDIDACY WAS A SUBSTANTIAL OR MOTIVATING FACTOR IN HIS TERMINATION.

Even if running for public office deserves constitutional protection under the facts of this case, Burleson's § 1983 claim still fails to meet the requirements of such cause of action. To succeed, Burleson must show that his protected speech was a "substantial" or "motivating" factor in the allegedly retaliatory decision. *See Gattis v. Brice*, 136 F.3d 724, 726 (11ᵗʰ Cir. 1998) (quoting *Mt. Healthy*, 429 U.S. at 287; *Bryson*, 888 F.2d at 1565-66). To survive summary judgment, plaintiff must "make a showing sufficient to permit a reasonable jury to find that his protected speech was a substantial or motivating factor behind his [termination]." *Gattis*, 136 F.3d at 726. "Where causation is lacking, an employee's claim of retaliatory discharge must fail and it is unnecessary to consider the other three elements." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11ᵗʰ Cir. 1996).

The Eleventh Circuit has considered several factors in determining whether the alleged protected speech was a substantial or motivating factor: 1) temporal relationship between the protected speech and the adverse employment action; 2) evidence of pretext in the asserted reasons for the employment action; 3) comments or actions by the employer related to the protected speech; 4) any variations in the reasons proffered for the employment action; and 5) circumstantial evidence of a causal link between the protected speech and the employment action. *Stanley v. City of Dalton*, 219 F.3d 1280, 1291 n.20 (11ᵗʰ Cir. 2000).[6]  In considering these

---

[6]

'[W]here termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision,' *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11ᵗʰ Cir. 1996). ...[The court has] also examined whether any other asserted reasons for the termination were shown to be pretextual. *See Walker [v. Schwalbe]*, 112 F.3d [1127,]...1131 [(11ᵗʰ Cir. 1997)] (noting a question of fact as to whether the policy under which the employee was allegedly fired was in effect at the time of the conduct in question); *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1507 (11ᵗʰ Cir. 1990) (noting evidence

factors, the court concludes that Burleson has not offered sufficient evidence that would support a

jury verdict in his favor.  At best, he merely suggested inferences – but not reasonable ones – to

support his theory.  Although the court in evaluating a motion for summary judgment must draw

all reasonable inferences in favor of the nonmovant, the court need not give the nonmovant the

benefit of *all* inferences, but merely every *reasonable* inference.  *Graham*, 193 F.3d at 1282.

1. Timing

Burleson was terminated approximately five days after his alleged protected activity.

However, the decision to eliminate his position had already been made and Burleson offered no

evidence that the decision maker had a reason to retaliate against Burleson based on his

candidacy.  These facts make this case similar to those that weighed against the plaintiff in *Mize v.

Jefferson City Board of Education*, 93 F.3d at 745.  The *Mize* court refused to allow temporal

proximity alone to establish causation because the plaintiff's alleged protected speech was not in

conflict with any interest held by the decision maker.  The Eleventh Circuit held that

---

calling the asserted reason for the discharge into question).  Further, [the court has
also] examined any comments made, or actions taken, by the employer indicating that
the discharge was related to the protected speech.  *See Fikes [v. City of Daphne,]* 79
F.3d [1079,]...1084 [(11ᵗʰ Cir. 1996)] (noting the police chief's statement that he
wanted the plaintiff out of the department); *Stewart*, 908 F.2d at 1507 (noting
comments indicating the speech was a factor in the termination decision); [citations
omitted]. [The court has] also looked to whether the asserted reason for the discharge
varied.  *See Fikes*, 79 F.3d at 1084 (noting that the initial cause cited for discharge
was different than the cause stated at an internal hearing).  Finally, [the court has]
considered circumstantial evidence of causation including such facts as who initiated
any internal investigations or termination proceedings, whether there was any
evidence of management hostility to the speech in question, or whether the employer
had a motive to retaliate.  *See Beckwith [v. City of Daytona Beach Shores]*, 58 F.3d
[1554,]...1564-65 [(11ᵗʰ Cir. 1995)].  There is no one factor that is outcome
determinative, but all factors must be taken into account.
*Stanley*, 219 F.3d at 1291 n.20.

it does not follow...that every time a person engages in constitutionally protected activity within a short time prior to an adverse employment decision that an inference may reasonably be drawn that they were related. Every act of expression is not equally as likely to draw a negative response from an employer as every other; for the link to be made, it must be reasonable to assume that the employer had cause to retaliate.... Taking the evidence in the context of the entire case, the fact that the adverse employment decision took place shortly after Mize's complaint does not, by itself, permit a reasonable inference that [defendant's] decision was motivated by a desire to retaliate.

93 F.3d at 745.

Likewise, taking the evidence in the context of the entire case here, the timing alone of Burleson's termination does not create reason to assume that the employer "had any reason to retaliate against [him]." *Mize*, 93 F.3d at 745.

In *Mize*, the court also considered the decision maker's unrebutted testimony that he had already decided to terminate the plaintiff's employment prior to hearing her protected speech. The decision maker in *Mize* testified he heard the protected speech later on the same day as he made the decision. *Mize*, 93 F.3d at 743. In this case, the facts are even stronger for the employer than the facts in *Mize*, because Burleson did not dispute that his employer had decided to include him in the RIF prior to March 4, 2000 – *two weeks before* the announcement of Burleson's candidacy appeared in the newspaper on March 19, 2000. Thus, like the plaintiff in *Mize*, Burleson engaged in his allegedly protected speech *after* his employer had already made the decision to terminate his position. The time span between the date the defendants decided to terminate his position and the alleged protected speech occurred was much longer than the few hours held insufficient to support the plaintiff's claim in *Mize*. Also, just as in *Mize*, the fact that the employer implemented the decision after the announcement of Burleson's candidacy is of no consequence. *See Mize*, 93 F.3d at 745-46 (decision to terminate made earlier the same day as the protected

19

activity, but the employee was informed of termination a month later). Thus, the mere fact that his employer informed Burleson of the decision to terminate his position after the announcement of his candidacy does not provide sufficient evidence, or even a reasonable inference, that his allegedly protected speech caused his termination.

2. Pretextual Reasons

Burleson concedes that he was eventually going to be terminated, and offered no evidence that he would not have been terminated on April 14, 2000, the end of the early retirement incentive. However, he argued that he was terminated three weeks early in retaliation for his declaring his candidacy. The evidence that he offered to support this assertion, however, failed to demonstrate that his early termination was causally related to his announcing his candidacy for the County Commission.

The mere fact that the senior management team had planned to wait until the end of the early retirement incentive period to conduct the RIF does not create a causal nexus between Burleson's alleged speech and his termination. Indeed, the evidence supports the opposite conclusion: defendants had already selected Burleson for the RIF prior to his candidacy being announced and decided to advance the effective date of the RIF because of Burleson's inquiry. Indeed, the fact that Patton told Scarborough – over a week before Burleson's termination on March 24, 2000, and before the March 19 newspaper article – that she and Burleson were "on the list" implies that Burleson would be discharged due to a non-retaliatory motive. Thus, the only inference to be drawn from Patton's alleged statements about a "list" is that a decision about which positions to include in the RIF had already been made prior to publication of the March 19 newspaper article. Such evidence that the decision had been made prior to the allegedly protected

20

speech supports the conclusion that the decision to terminate Burleson as part of a reduction in force was not a pretext for retaliation. *See e.g. Mize*, 93 F.3d at 743, 745.

Burleson asserts pretext because he contends that he had saved the Authority money by his history of negotiating good deals on purchases for the Authority. Whether the employer made a wise decision or a foolish one in slating Burleson for the RIF makes no difference in the analysis of this case. As the Eleventh Circuit has consistently stated in analyzing claims of pretext in the similar context of discrimination cases,

> 'We have repeatedly and emphatically held that a defendant may terminate an employee for a good or a bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'

*Wascura v. City of South Miami*, 257 F.3d 1238, 1247 (11ᵗʰ Cir. 2001)(quoting *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11ᵗʰ Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000)); *see also Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1324 n.7 (11ᵗʰ Cir. 1998)(quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11ᵗʰ Cir. 1984) ( "'The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'")). "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve." *Nix*, 738 F.2d at 1187 (citations omitted). As the court has explained, "'a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where... the reason is one that might have

motivated a reasonable employer.'" *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997), *cert. denied*, 522 U.S. 1095 (1998)).  Thus, the decision to terminate Burleson's position must not be evaluated based on whether the employer made a wise decision but only to determine whether the proffered reason of economics might have motivated the decision.  Burleson offered no more than wishful thinking to meet his burden of proving pretext.

3.  Comments or Actions by the Employer

Burleson offered no evidence of statements by anyone associated with the Authority indicating that his candidacy motivated his termination.  The absence of any evidence on this factor contrasts with cases such as *Fikes v. City of Daphne*, 79 F.3d 1079 (11th Cir. 1996).

4.  Variations in Reasons for Termination

Burleson offered no evidence that the asserted reason for his discharge ever varied. Anderson informed Burleson on March 24, 2000, that his employment was terminated as part of an economically driven RIF.  That reason is the same one argued by the defendants here. Burleson offered no evidence that any other reason has ever been proffered by the Authority. Thus, an analysis of this factor does not assist Burleson in proving any causal link between the speech and the termination.

5.  Circumstantial Evidence of Motive

Burleson presented no evidence that Anderson had any motive to retaliate against Burleson for  seeking a county commission seat.  Indeed, Burleson admitted in his deposition  that he is aware of no reason why Anderson would not wish to see him elected to the position. Burleson also  admitted that  no one ever told him his candidacy for the Colbert County

22

Commission was the reason he was terminated, and that it was just his own thought that the two were related.  Instead of supporting his theory of retaliation, some circumstantial evidence supports the defendants' position.  For example, Anderson made the decision to terminate Burleson's position before the announcement of his candidacy.  News of the possible RIF had leaked before the announcement of Burleson's candidacy.  And two other employees of the Authority also ran for public office and the defendants took no adverse employment action against them.  The circumstantial evidence – indeed, all the significant evidence – in this case overwhelmingly supports the conclusion that Burleson has failed to show that the reason given for his termination was a pretext for improper retaliation.  Circumstantial evidence thus fails to support Burleson's claim that his candidacy played a role in the decision to terminate his position.

Burleson failed to present sufficient evidence of any factors relevant to show that this candidacy was a substantial or motivating factor in the decision to terminate his position. Therefore, summary judgment should be granted to the defendants.

C.  THE DEFENDANTS WOULD HAVE MADE THE SAME DECISION

Even if Burleson had established that his candidacy qualified as protected speech, and even if he had presented evidence that his candidacy played a substantial part in the termination of his employment, defendants are still entitled to summary judgment. The uncontradicted evidence establishes that the Authority would have terminated Burleson's position without consideration of his candidacy.  As previously discussed, Anderson and the management team had decided to eliminate Burleson's position prior to the announcement of his candidacy.  The uncontradicted evidence, likewise, showed that the effective date of Burleson's termination was advanced in response to Burleson's inquiry about his job status after hearing that his name "was on the list"

23

prior to the publicity about his candidacy.  The evidence conclusively established that the defendants would have terminated Burleson's position for economic reasons even absent his candidacy.

For these reasons, summary judgment is due to be GRANTED in favor of the defendants by separate order.

DONE this 25th day of September, 2002.

Karon O. Bowdre
United States District Judge